Commonwealth *v.* Martin, Appellant.

Argued April 28, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Samuel Dashiell,* with him *Edmund E. De Paul,* for appellant.

*Benjamin H. Levintow,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, October 12, 1971:

Appellant raises two issues on these appeals: (1) whether the delay in appellant's not being brought to trial within the 180 days provided in the Agreement on Detainers, Act of September 8, 1959, P. L. 829, 19 P.S. §1431 et seq., operates automatically to divest the court of jurisdiction over this defendant; and (2) whether plea bargaining is a form of request for continuance for good cause shown. We must also decide whether appellant's subsequent plea of guilty was voluntary.*

The pertinent factual background is as follows. Appellant was serving a sentence in the New Jersey prison system when a Pennsylvania warrant issued charging him with murder in connection with the execution-type slaying of one Richard Johnson by five individuals in a secluded area of Fairmount Park in Philadelphia.

Appellant filed a request for the disposition of the warrant pursuant to the Agreement on Detainers on July 14, 1969. On July 17, 1969, the Philadelphia prosecuting authorities accepted temporary custody of appellant presumably with a view to proceeding to trial. Appellant received a preliminary hearing on Novem-

---

* No issue is before us as to whether the guilty plea constitutes a waiver of defendant's right to challenge this issue.

ber 12, 1969, and was indicted for murder and conspiracy on December 9, 1969.

Extensive plea bargaining occurred on appellant's behalf. On May 13, 1970, appellant's counsel filed three petitions: a motion to suppress a confession, an application for the appointment of an investigator, and a petition to have bail set. On June 2, 1970, the application for an investigator was granted and the other petitions continued.

On July 15, 1970, appellant filed a petition for writ of habeas corpus, asserting 180 days had passed since he had requested disposition of his case. A hearing was held on August 13, 1970, and the court, ruling that a continuance had been granted for good cause shown at appellant's request, dismissed the petition on August 17, 1970.

On September 9, 1970, appellant pleaded guilty to murder generally. The Commonwealth certified the case rose no higher than second degree. An extensive on-the-record colloquy occurred. On November 23, 1970, appellant received a sentence of from two to five years in consideration for his cooperating in testifying at the trial of one of his co-conspirators.

Appellant has appealed both from the dismissal of his habeas corpus petition and the judgment of sentence, although the latter appeal is not strenuously pressed. Each will be discussed in turn.

The pertinent provisions of the Agreement on Detainers reads as follows:

"Article III

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial

within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: Provided, That for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. . . .

"Article V

"(c) If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order, dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect." Act of September 8, 1959, supra, 19 P.S. §1431.

The determinative issue before the habeas court was whether appellant had, in fact, requested and received a continuance for good cause shown. The hearing court ruled such a request had been made, and we may not disturb this finding unless it is clearly unsupported by the evidence.

The trial court file has been lost, and the habeas court based its finding on testimony given by the assistant district attorney and defense counsel. Although this record does not disclose precisely when delivery to the appropriate prosecuting officer actually occurred, presumably it was within a few days after July 14, 1969. Accordingly, the 180-day period expired a few days subsequent to January 10, 1970.

At the habeas corpus hearing the assistant district attorney testified that on January 2, 1970, appellant's counsel appeared before the court and made an application for a continuance. While the witness was not absolutely positive the motion had been made on that exact date, a finding to that effect was certainly permissible from the testimony.

Appellant's counsel testified at the hearing that extensive plea bargaining had occurred prior to January, 1970. He also stated that in all probability he informed the assistant district attorney on January 2, 1970, that he might file an application to suppress a confession, which was in actuality filed on May 13, 1970, when, according to counsel, plea bargaining attempts were faltering.

We believe the hearing court's disposition of this issue possesses sufficient support in the record. Appellant cannot lull the prosecution into plea bargaining attempts only to file for a discharge after the expiration of 180 days. Likewise, the Commonwealth cannot delay trial indefinitely while half-hearted and ephemeral plea bargaining occurs. However, in the present case, it appears the plea bargaining was in good faith and without purposeful delay. Furthermore, testimony was elicited that appellant had, in fact, requested a continuance. While in other cases it is to be expected that the motion for a continuance and the moving party will appear as a matter of record to preclude the difficult issue of fact presented to the habeas court, we are unwilling to find any error on the record before us.

The present case is thus wholly distinct from *Commonwealth v. Bell*, 442 Pa. 566, 276 A. 2d 834 (1971) where under a similar statute we ruled the defendant must be discharged after the passage of 180 days, for there the defendant had *in no way* been responsible for the delay in his being brought to trial.

As to the appeal from the judgment of sentence, only the legality of the sentence and the voluntariness

of the plea can be raised in this case. See, e.g., *Commonwealth v. Dillinger*, 440 Pa. 336, 269 A. 2d 505 (1970); *Commonwealth v. Culpepper*, 434 Pa. 15, 252 A. 2d 624 (1969). Appellant's sentence of from two to five years was clearly permissible. Likewise, the on-the-record colloquy at the time he entered his plea reveals it was unquestionably voluntary and intelligent.* The

---

* After a lengthy series of questions by the prosecuting attorney exploring the appellant's understanding of his actions, the court proceeded as follows. This portion of the colloquy is set out in detail because of its commendable thoroughness.

"THE COURT: I would like to amplify the questions that have been asked of this defendant.

"BY THE COURT:

"Q. It is very important, sir, that you thoroughly understand, before you enter any plea of guilty to murder generally, the nature and consequences of that plea, and the district attorney has generally outlined that for you, but I just want to supplement it by saying this: As you stand here, you are aware that you are charged as an accomplice with one Byron Collins in the murder of Richard Johnson on April 19, 1969? You are aware of that, are you?

"A. Yes, sir.

"Q. Are you fully aware that you are presumed to be innocent of that crime, and that the burden is upon the Commonwealth, the State, represented by the district attorney, to prove your guilt beyond a reasonable doubt. Are you aware of that, sir?

"A. Yes, I am.

"Q. Are you aware that you have the right to a trial by jury to determine your guilt or innocence?

"A. Yes, sir.

"Q. Or you could let the Commonwealth certify—as it expects to do in this case—the degree of the crime does not exceed second-degree murder, and that you could have a judge determine your guilt or innocence.

"A. Yes, sir.

"Q. Do you understand if you enter a plea of guilty, it is a general plea of guilty to the indictment charging you with murder? And after the entry of such a plea, the Court will hear evidence. The evidence may be by way of an agreed summarization of the facts, between your counsel and the district attorney, of what happened. From that evidence that is presented to me by way of a summarization of the events leading up to the shooting of Richard

requisites of due process and Rule 319 of the Rules of Criminal Procedure were satisfied.

Johnson, I, the Court, then have the duty of determining whether you are guilty of murder of the first degree, murder of the second degree, or voluntary manslaughter.

Do you understand that?

"A. Yes, sir, I understand.

"Q. And you understand that I could, if the evidence warrants it, find you guilty of murder of the first degree, which is punishable by death or life imprisonment. Do you understand that?

"A. Yes, sir.

"Q. You are entering this plea of guilty to murder generally upon the representation of the district attorney that it will seek no more than a verdict of second-degree murder?

"A. Yes, sir.

"Q. And in the event that the Court, after hearing the evidence, determines that the crime rises higher than second-degree murder, you will be allowed to withdraw your plea of guilty.

"A. Yes, sir.

"Q. So you are not walking into any trap where you could be found guilty of first-degree murder with no relief. It is the agreement of the district attorney that in the event the Court, after hearing the evidence or a summary of the evidence, finds that this evidence warrants a first-degree verdict, you will then be allowed to withdraw your plea.

"A. Yes, sir.

"Q. You understand that?

"A. Yes, sir.

"Q. Do you understand if I, the Court, after hearing the evidence or a summary of the evidence, find you guilty of second-degree murder, I then have the power to impose sentence upon you? Do you understand that?

"A. Yes, sir.

"Q. Do you understand that the sentence for second-degree murder is not less than ten nor more than twenty years? That is the Penal Code. Do you understand that?

"A. Yes, sir.

"Q. You also understand that the district attorney has recommended to the Court that in the event you are adjudged guilty of murder in the second degree, that your sentence be for a term of not less than three years nor more than fifteen years?

"A. Yes, sir.

"Q. Let me repeat that.

Accordingly, the order of the Court of Common Pleas of Philadelphia dismissing the habeas corpus petition and the judgment of sentence are affirmed.

---

You understand that the district attorney will recommend to the Court that in the event you are found guilty of murder in the second degree, you will be sentenced to a term of not less than three nor more than fifteen years?

"A. Yes, sir.

"Q. In the event that the Court determines that the sentence should be greater than that, you will then be allowed to withdraw your plea. Do you understand that?

"A. Yes, sir.

"Q. In other words, to sum it up, you are entering a plea of guilty on the condition (1) that you will be found guilty of not more than second-degree murder and (2) if found guilty of second-degree murder, that the sentence will not be more than three to fifteen years?

"A. Yes, sir.

"Q. If you elected to go to trial, you would not only have the benefit of the presumption of innocence, which requires the Commonwealth to prove you are guilty beyond a reasonable doubt, you would also go to trial with a right not to take the witness stand and testify, and you could not be compelled to do so. And in the event that you exercised such a right, no inference of your guilt could be drawn by the jury from the fact that you did not take the stand, and that the Court would be obliged to charge the jury on that point.

Do you understand that that is one of your rights?

"A. Yes, sir.

"Q. Are there any questions you want to ask about the case before you plead guilty?

"A. No, sir.

"Q. Now, you have fully conferred with Mr. Dashiell and Mr. DePaul, your counsel, before you agreed to enter this plea?

"A. Yes, sir.

"Q. And they have, as I have, explained to you what that means?

"A. Yes, sir.

"Q. And the consequences to you?

"A. Yes.

"Q. And you are fully satisfied with the representation of Mr. DePaul and Mr. Dashiell?

"A. Yes, sir.